IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| NICHOLAS EURE #286-231 | * |
| Plaintiff | * |
|  | *   Civil Action No.: JFM 02-3691 |
| vs | * |
| THOMAS R. CORCORAN, et. al. | * |
| Defendants | * |
|  | * |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

Plaintiff, Nicholas Eure, by his undersigned attorney, submits this Memorandum in opposition to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment.

## I. UNDISPUTED FACTS

On November 14, 1999, Plaintiff was an inmate incarcerated at the Maryland House of Corrections. On the aforesaid date, he was leaving his cell in Dormitory J and was proceeding from the dormitory through an area known as B Flats. As he was proceeding through a group of other inmates, he was stabbed several times which resulted in the loss of his right eye.

## II. DISPUTED FACTS

There were no supervisory personnel in the area of the stairway in B Flate on the day in question. There is regularly a guard supervising the movement of prisoners in the area during the week, however, this being a Sunday, none was present.

Plaintiff was stabbed by an unidentified assailant with a knife. He denies that inmate Saunders was involved in the assault and he further denies that he was stabbed with a broom as alleged by the Defendants.

### III. CONSENT TO OFFICER JOHNSON'S DISMISSAL

Investigation has revealed that Plaintiff's claim against Officer Johnson should be dismissed and Plaintiff has no objection to such dismissal.

### IV. ARGUMENT

#### A. CIVIL RIGHTS CLAIM

It is Plaintiff's position that the Eighth Amendment poses a duty on the part of prison officials to protect prisoners from violence from the hands of other prisoners. In the instant case, the Defendants showed a deliberate indifference for the safety of inmates who were required to pass from their dorms in J Block to the dining area. Movement of inmates during the lunch entails a large number of individuals moving at one time. In the instant case, the Defendants, pursuant to their duty, posted guards in the area leading from cell block H and J during the week. (Plaintiff's Sworn Declaration, Exhibit 1). However, on the weekends and in particular, November 14, 1999, no guards were stationed in the area. The area in question is isolated from the guard station located at the front of B flats. Prisoners, when going to meals, leave their cell blocks and proceed along a passageway approximately 50 yards long at the end of which is a guard who is positioned behind a grillwork. This was the location of Defendant Officer Johnson on the date in question. During the week, there are correctional officers positioned in the area to assure the orderly and safe passage of the prisoners from J and H dorms

through the flats. The presence of such officers during the week indicates a recognition of the Defendants in having personnel stationed there to monitor the safe and orderly movement of the prisoners. The failure to station officers in the area on the Sunday in question reflects an administrative decision on the part of the Defendants. Whether the decision not to staff the area because of reduced work force on the weekends or some other reason is inconsequential. Having personnel in the stairway area during the week exhibits a recognition of a need for such staffing. The failure to maintain such staffing on the weekends shows a deliberate indifference to that need.

It is submitted that the prison environment is inherently dangerous and requires constant surveillance to assure the safety of prisoners. This is not a situation where a guard failed to see what was happening or was tardy in reacting to a situation. The Defendants made a deliberate decision not to place correctional personnel in an area where they had been deemed to be necessary. The Defendants' failure to take the necessary steps to insure the necessary numbers of personnel to supervise and monitor the movement of prisoners on the weekends posed an unnecessary danger to Mr. Eure as well as other prisoners.

The Court in <u>Winfield vs. Bass</u>, 106 F.2d 525, 531 (4th Cir. 1997) held that it was well established that prison officials must take reasonable measures to guarantee inmates' safety and a component of that duty is the requirement to protect prisoners from violence at the hands of other prisoners. In <u>Farmer vs. Brennan</u>, 511 U.S. 825, 832, 114 S.Ct. 1970 128 L.Ed. 811 (1994), the Court recognized that the Eighth Amendment governed the treatment prisoners received while incarcerated and the conditions of

confinement. That Court made it clear that prison officials must "take reasonable measures to guarantee the safety of the inmates". The Farmer Court went on to say that a plaintiff need not allege that prison officials knew that he was "especially likely to be assaulted by the specific prisoner who eventually committed the assault" in order to state a cause of action under the Eighth Amendment.

We do not have a situation here where there was a known threat to Mr. Eure which the Defendants had actual knowledge, but chose to ignore. Nor do we have a situation where the Defendants merely neglected to protect Mr. Eure. Here we have a situation where the Defendants had previously recognized the need to staff the stairway area but decided not to do so on that day in question. This was a decision that endangered any inmate who might be subject to an attack by a fellow inmate.

The Defendants in deciding not to staff the area in question had to know that they were taking a calculated risk that nothing would happen. Just as one may choose to go through a red light, he may do so as long as he does not strike another vehicle (or not observed by a police officer). However, if he does strike another vehicle, he will be held responsible. Likewise, Defendants chose not to staff the area in question and if Mr. Eure had not been injured, then the Defendants would have no liability. Unfortunately, Mr. Eure was attacked and lost an eye because of the Defendants calculated gamble. Prisoners should not be subjected to maiming or death because prison officials choose to "roll the dice" when it comes to maintaining security.

It is cruel and unusual punishment to create conditions in a prison where one prisoner can prey upon another. While the lack of correction officers in this instance

involved a limited area of the prison, would Defendants actions be countenanced if they had made a decision not to staff the entire prison on Sunday. It would appear that such a decision would be catastrophic and certainly would manifest a deliberate indifference for the safety of the inmates. If a case of deliberate indifference could be made in the latter instance there is no reason why the same would not apply in the former.

### B.  ALL THE DEFENDANTS PARTICIPATED IN THE SITUATION WHICH RESULTED IN PLAINTIFF'S INJURIES

Plaintiff amended his Complaint to reflect the administration of the House of Correction at the time of this incident. The named Defendants were in charge of the institution's operation and were responsible for its staffing policies. Each of the Defendants by virtue of their position was responsible for the conditions that resulted in the loss of Plaintiff's eye.

### C.  QUALIFIED IMMUNITY DOES NOT APPLY TO DEFENDANTS

Defendants assert that they are entitled to Summary Judgment on the basis of qualified immunity as to all claims. Qualified immunity on the part of state prison officials and officers is a matter on which the burden of proof is allocated to defendants. Tanner vs. Hardy, 764 F.2d 1024 (4th Cir. 1985). They argue that the evidence does not establish that they had violated any clearly established Constitutional right of which a reasonable public official should have known citing Harlow vs. Fitzgerald, 457 U.S. 800 (1982). It is Plaintiff's position, however, that Warden Hutchinson, Assistant Warden Stewart and Security Chief Peguese were responsible for setting and implementing the staffing policies for the institution. They failed in this responsibility. The injuries

which Plaintiff sustained under these circumstances constituted a violation of his rights under the Eighth Amendment. The Defendants' failure to staff the area in question for the protection of prisoners when they were well aware of the dangers to which Mr. Eure and other prisoners were exposed reflects a deliberate indifference which constitutes a violation of 42 U.S.C. §1983. Prison officials who have the power to protect prisoners through reasonable efforts should not be permitted to shirk that responsibility and obligation. The Defendants are not entitled to limited immunity under the circumstances of this case and there is no public policy interest which would warrant such immunity.

## **CONCLUSION**

There is a significant dispute as to the facts material to the resolution of Plaintiff's claim.

It is submitted that Defendants by their inaction in failing to implement appropriate policies and procedures for the safety of prisoners, violated Plaintiff's Eighth Amendment rights and therefore should not be afforded qualified immunity under the facts of this case. For these reasons, Defendant's Motion to Dismiss or in the alternative Motion for Summary Judgment should be denied.

If the Court does grant Defendant's Motion for Summary Judgment or dismissal as to the 42 U.S.C.§ 1983 claim, it is requested that the Maryland Civil Rights Act claim be certified to the State Court.

                /s/

Bert W. Kapinus
Attorney for the Plaintiff
5503 44th Avenue
Hyattsville, Maryland 20781
Telephone: (301) 864-3454


IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NICHOLAS EURE          *

    Plaintiff          *

                            *     Civil Action No.: JFM-02-3691

vs                     *

THOMAS R. CORCORAN, et. al.      *

    Defendants          *

## DECLARATION

I, NICHOLAS EURE #286-231, being an inmate at the Maryland House of Correction, being competent to testify, hereby declare on my personal knowledge as follows:

1. On November 14, 1999, I was an inmate and incarcerated at the Maryland House of Correction in Dormitory J.

2. On the aforesaid date, I had just descended the steps when I passed through a group of inmates who were standing in the area. The group consisted of 2 or 3 individuals.

3. As I walked passed the group, I felt a sensation in the back of my head and when I turned around, I was stabbed in the eye with a shank or knife.

4. I do not know who assaulted me, however I do know it was not Ryan Saunders. I also know that I was not stabbed or struck with a broom handle.

5. After the assault, I made my way down B-Flats to the locked front grill of B-Flats. This is where Officer Johnson, who was by herself, was standing.

6. Medical personnel took me by ambulance to John Hopkins University Hospital.

7. During the week guards are present in the area of the steps of H and B-Flats, but they are not present on the weekends.

8. As a result of this incident, I lost my right eye and now have a prosthetic eye.

I have read the above statements and hereby declare, under penalty of perjury, they are true and correct to the best of my knowledge, information and belief.

                                            /s/

                                            Nicholas Eure

                                            June 22, 2004

Date

**EXHIBIT 1**